Deborah L. KEEL and Stephen A. Keel, Plaintiffs,

v.

GROUP HOSPITALIZATION MEDICAL SERVICES, INC. d/b/a Blue Cross and Blue Shield of the National Capital Area, Defendant.

Civ. A. No. 88–0203–A.

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 15, 1988.

224

Philip H. Jones, Alexandria, Va., for plaintiffs.

David Machanic, Alexandria, Va., for defendant.

1. This suit, purporting to assert several state law claims, was originally brought in the Circuit Court for the City of Alexandria. Defendants successfully petitioned for removal to this Court under 28 U.S.C. § 1441(b). The sole federal question presented in this case is the enforcement of ERISA benefits. *See Metropolitan Life*

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

This case involves the straightforward application of well-established principles under the Employee Retirement Income Security Act of 1974 (ERISA), codified at 29 U.S.C.A. §§ 1001 *et seq.* (1985). Plaintiffs seek to enforce alleged benefits under a contract governed by ERISA.[1] The contract in issue, a group hospitalization and medical services group contract (Group Contract) issued by defendant, provided medical benefits for employees of Kay Jewelers, Inc. and their families. Plaintiff, Deborah Keel, a Kay Jewelers employee and her husband, Stephen Keel, were covered under the Group Contract. Plaintiff Stephen Keel was injured in an automobile accident in December 1983, while the Group Contract was in full force and effect. Accordingly, he received benefits under the Group Contract for hospitalization and medical services required for the injuries incurred in the accident. These benefits continued until April 1, 1984, at which time the Group Contract terminated and the benefits ceased.

Plaintiffs sue here, contending that termination of the Group Contract does not justify termination of benefits. The precise question presented under ERISA is whether defendant's refusal to continue payment of benefits after termination of the Group Contract was arbitrary or capricious where those benefits relate to injuries incurred while the Group Contract was in force.

For the reasons stated here, the Court concludes that defendant's decision to withhold payment from Plaintiffs was not arbitrary or capricious; entitlement to Group Contract benefits terminated when the Group Contract terminated.

*Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987) (A suit to enforce benefits under an employee benefit plan, "though it purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress [in ERISA].").

### Facts

The dispositive facts are undisputed and easily stated.[2]  In 1977, Kay Jewelers entered into a Group Contract with defendant, Group Hospitalization and Medical Services, Inc. (GHMSI),[3] designed to provide hospitalization coverage and major medical benefits for subscribing employees of Kay Jewelers and their families.  The Group Contract was amended from time to time, but remained in effect and essentially unchanged from 1977 to April 1, 1984.  Plaintiffs were covered individuals under the Group Contract.

A complete copy of the Group Contract was on file at Kay Jewelers and available for scrutiny by their employees and other covered individuals, including plaintiffs.  Plaintiffs were also issued a pamphlet entitled "A Comprehensive Program of Health Protection for the Employees of Kay Jewelers, Inc."  This pamphlet generally described the Group Contract's benefits, but cautioned that the rights of the parties were controlled, not by the pamphlet, but by the complete Group Contract on file with the employer.[4]

In December, 1983, while plaintiffs were covered under the Group Contract, plaintiff Stephen Keel was injured in an automobile accident in Fairfax, Virginia.  As a result of his injuries, Mr. Keel required hospitalization and a variety of surgical and medical services.  Defendant, pursuant to the Group Contract, paid benefits to plaintiffs for the hospitalization and medical and surgical services required by Mr. Keel.  Defendant continued to pay benefits to plaintiffs until April 1, 1984, at which time the Group Contract was terminated by Mrs. Keel's Group.  No benefits were paid thereafter, defendant taking the position that termination of the Group Contract terminated any entitlement to benefits.

### Analysis

1.  Jurisdiction and Venue

The Group Contract at issue in this case is governed by the requirements and restrictions of ERISA as an employee benefit plan "maintained [by an employer] for the purpose of providing for participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment...."  29 U.S.C. § 1002(1)(A).  Because this case seeks to enforce alleged benefits under an ERISA-regulated employee benefit plan, jurisdiction properly lies before this court pursuant to 29 U.S.C. § 1132(e)(1).[5]  Venue is also appropriate under 29 U.S.C. § 1132(e)(2).[6]

2.  Application of ERISA

   a.  Preemption of State Claims

■ Plaintiffs assert state statutory[7] and common law breach of contract

---

2.  The parties, in lieu of a trial, submitted this matter to the Court on briefs and stipulated facts.  The facts recited here are those found by the Court pursuant to Fed.R.Civ.P. 52(a).

3.  GHMSI also does business as "Blue Cross and Blue Shield of the National Capital Area."

4.  The pamphlet stated:
      This reference guide is not a contract, however.  The group contract spelling out the terms and conditions of your health coverage is on file with your employer.  Your employer or group represents you and is not considered an agent of [Defendant].

5.  *See Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987) (Congress intended that "all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans be treated as federal questions governed by § 502(a) [codified at 29 U.S.C. § 1132(a)].").

6.  A claim seeking enforcement of benefits under an ERISA-regulated plan "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found...."  29 U.S.C. § 1132(e)(2).  In this case, the employer, under whose employment the plaintiffs qualified for the plan, is located in the Eastern District of Virginia.  The alleged breach also took place within the Eastern District when the defendant refused to pay medical bills incurred by plaintiff at a hospital in this District.

7.  Specifically, plaintiffs allege that the pamphlet provided by defendant was deceptive to the average plan participant regarding the vesting of benefits.  According to the plaintiffs, such deception, if proven, would be a violation of the

claims.[8] Under the explicit provisions of ERISA, however, those state claims are preempted. *See* 29 U.S.C. § 1144(a).

In determining whether federal law preempts state law, the Court must first look to the intention of Congress. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987); *Shaw v. Delta Air Lines,* 463 U.S. 85, 96, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983); *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985). ERISA was enacted in 1974 with the explicit goal of

> protect[ing] ... the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b). To achieve those purposes, Congress carved out a domain of exclusively federal authority in order to " 'eliminat[e] the threat of conflicting or inconsistent State and local regulation of employee benefit plans.' " [9] ERISA thus expressly preempts, with narrow exceptions,[10] "any and all State laws insofar as

---

Virginia Code, Title 38.2–4312(A)(3). That statutory provision, however, governs only the administration of health maintenance organizations (HMOs). *See generally* Va.Code §§ 38.2–4300–4321 (chapter regulating HMOs). GHMSI is not an HMO, but rather a prepaid health care plan. *Cf. Virginia Acad. of Clinical Psychologists v. Blue Shield,* 624 F.2d 476 (4th Cir.1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981) (in an antitrust suit, Blue Shield plans characterized as prepaid health care plans); *compare* Va.Code § 38.2–4300 (HMO defined as the arrangement of one or more health care plans which primarily consist of "arranging for or providing health care services, as distinguished from mere indemnification against the cost of the services, on a prepaid basis") *with* Va.Code § 38.2–4201 (health services plan defined as "arrangement for offering or administering health services or similar or related services by a nonstock corporation licensed under this chapter"). Section 38.2–4312(A)(3) is, therefore, inapplicable to GHMSI. Even if it were applicable, it would be preempted by ERISA. *Cf.* Powell v. Chesapeake and Potomac Telephone Co. of Va., Inc., *780 F.2d 419, 423–24 (4th Cir.1985) (analogous statutory claim under § 38.2–502 preempted by ERISA).*

8. Plaintiffs have alleged that defendant breached the Group Contract, as explained in the summary benefit pamphlet, by denying benefits after April 1, 1984. First, plaintiffs claim that the Group Contract itself was not made available to them by their employer or by defendant GHMSI. The pamphlet provided to them in lieu of that Contract allegedly did not make clear when benefits "vested." Plaintiffs assert that the pamphlet's ambiguity led them, as reasonable plan participants, to believe that medical benefits vested under the Contract when the injury incurred; that is, when Mr. Keel was injured, he became entitled to benefits for all necessary medical services as a result of that injury. According to plaintiffs, common law contract interpretation principles demand that ambiguities in the contract be resolved in favor of the insured; their understanding of the allegedly ambiguous Group Contract should, therefore, be adopted under those principles.

It is undisputed that Mr. Keel's injuries were incurred while the Group Contract was in full force and effect. Under the contract interpretation urged by the plaintiffs, therefore, the defendant has breached the Group Contract by denying Mr. Keel further benefits for that injury. The Court does not have to reach this issue because the state claims are preempted, *see infra* notes 9–14 and accompanying text.

9. *Pilot Life,* 107 S.Ct. at 1552 [quoting 120 Cong. Rec. 29197, 29933 (1974) ]. *See also Powell,* 780 F.2d at 422; *Holland v. Burlington Industries, Inc.,* 772 F.2d 1140, 1147 (4th Cir.1985), *cert. denied sub nom., Slack v. Burlington Industries, Inc.,* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562, and *aff'd mem. sub nom., Brooks v. Burlington Industries, Inc.,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986).

10. *See* 29 U.S.C. §§ 1144(b)(2)(A) and (b)(4). These exceptions are primarily tailored to preserve the states' traditional regulatory authority over insurance, banking, and securities matters. *See* Annotation, *Construction and Application of Preemption Exemption, Under Employee Retirement Income Security Act (29 U.S.C.S. §§ 1001 et seq.), For State Laws Regulating Insurance, Banking, or Securities (29 U.S.C.S. § 1144(b)(2)),* 87 A.L.R.Fed. 797 (1988). For discussions of the tension between the broad preemption provision and the saving clause, *see generally* Irish & Cohen, *ERISA Preemption: Judicial Flexibility and Statutory Rigidity,* 19 U.Mich.J.L.Ref. 109 (1985) (reviewing the legislative history and judicial application of the preemption provisions); Kilberg & Inman, *Preemption of State Laws Relating to Employee Benefit Plans: An Analysis of ERISA Section 514,* 62 Tex.L.Rev. 1313 (1984) (suggesting that the purpose and effect, rather

they may now or hereafter relate to any employee benefit plan" covered under ERISA. 29 U.S.C. § 1144(a).[11] In plain terms, "[i]f a state law 'relate[s] to ... employee benefit plan[s],' it is pre-empted." *Pilot Life,* 107 S.Ct. at 1552. The Fourth Circuit has broadly interpreted this provision to embrace in its preemptive scope all state laws, "insofar as they are invoked by beneficiaries claiming relief for injuries arising out of the administration of employee benefit plans." *Powell v Chesapeake and Potomac Telephone Co. of Va., Inc.,* 780 F.2d 419, 421 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986).[12] Such an interpretation comports with Congress' clear intention that courts develop a body of federal common law, " 'borrowing state law where appropriate, and guided by the policies expressed in ERISA and other federal labor laws,' " to govern the interpretation of ERISA's requirements for employee benefit plans. *Holland v. Burlington Industries, Inc.,* 772 F.2d 1140, 1147 n. 5 (4th Cir.1985) [quoting *Scott v. Gulf Oil Co.,* 754 F.2d 1499, 1501–1502 (9th Cir.1985)], *cert. denied sub nom., Slack v. Burlington Industries, Inc.,* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 and *aff'd mem. sub nom., Brooks v. Burlington Industries, Inc.,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986). Otherwise, the ultimate goal of nationally uniform protections under ERISA would be sacrificed to a panoply of conflicting or contradictory state protections.

■ In the instant case, the plaintiffs' state law claims clearly "relate to" the employee benefit plan at issue; under the Fourth Circuit's interpretation of that phrase, those claims were invoked by plaintiffs in their claims for relief for injuries resulting from the administration of that plan. Thus, the state claims are preempted by ERISA.[13] The only remedy available to the plaintiffs must, therefore, derive from those provided in ERISA.[14]

### b. Exhaustion of Administrative Remedies

■ Section 1132(a)(1)(B) of ERISA specifically empowers employee benefit plan participants and beneficiaries to bring a federal civil action to recover benefits or enforce rights under the plan. There is no explicit requirement that administrative remedies be exhausted before seeking federal court relief; however, it is within the district court's discretion to require that such administrative avenues be pursued before resort is had to any judicial remedy. *See Kross v. Western Electric Co., Inc.,*

---

than the form, of a state law be examined to determine if it "relates to" employee benefit plans); Kilberg & Heron, *The Preemption of State Law Under ERISA,* 1979 Duke L.J. 383, 394–403 (discussing the scope of the insurance saving clause and its relationship to the general preemption provision).

**11.** For purposes of the ERISA preemption provision, the term "State law" encompasses "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c). *See also Pilot Life,* 107 S.Ct. at 1553 n. 1; *Holland,* 772 F.2d at 1147.

**12.** *See also Holland v. Burlington Industries, Inc.,* 772 F.2d at 1147 (noting the "unparalleled breadth" of the ERISA preemption clause).

**13.** Nor are plaintiffs' claims rescued by the so-called "saving clause" that exempts from preemption State laws that regulate insurance. By that provision, Congress intended to preserve the states' traditional authority over the regulation of insurance under the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015. The Fourth Circuit has interpreted that clause as exempting from preemption "only those state insurance laws that regulate the 'business of insurance.' " *Powell,* 780 F.2d at 423. The "business of insurance," according to the Fourth Circuit, is relatively limited in scope; it primarily revolves around the "spreading and underwriting of a policyholder's risk." *Id.* Plaintiffs' claims plainly fall outside the ambit of this narrow exception.

**14.** In the words of the Supreme Court, Congress clearly intended to make

the civil enforcement provisions of ERISA § 502(a) [codified at 29 U.S.C. § 1132(a) ] ... the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits[;] ... varying state causes of action for claims within the scope of § 502(a) would pose an obstacle to the purposes and objectives of Congress.

*Pilot Life,* 107 S.Ct. at 1556.

701 F.2d 1238, 1244 (7th Cir.1983).[15] In the case at bar, there is evidence that plaintiffs appealed to GHMSI the original denial of benefits for medical services following Contract termination. Their attorney challenged, by letter, the defendant's refusal to pay; he formally requested "that [the defendant] comply with the terms of the coverage." Defendant responded by affirming and further explaining the benefits denial and by referring plaintiffs to the insurance carrier for further information. It appears to the Court, therefore, that plaintiffs have effectively exhausted their administrative remedies, and there is no reason for this Court to exercise its discretion to require further administrative review.[16]

**c. Standard of Review**

■ In reviewing the plaintiffs' claim, the Court's focus is narrow: it inquires only to ascertain whether the decision to deny alleged medical benefits to Mr. Keel was "arbitrary and capricious." *See Holland*, 772 F.2d at 1148; *LeFebre v. Westinghouse Electric Corp.*, 747 F.2d 197, 204 (4th Cir.1984).[17] The adoption of this standard serves Congress' primary goals in enacting ERISA: under ERISA, Congress sought to establish nationally uniform protections for employees, by imposing reporting and disclosure requirements and fiduciary responsibilities on plan administrators,[18] and by providing to all plan employees federal remedies; broad preemption of

**15.** *See also Taylor v. Bakery & Confectionary Union & Industry International Welfare Fund*, 455 F.Supp. 816, 819 (E.D.N.C.1978) ("Congress intended a claimant to exhaust his interfund remedies before seeking federal court review...."). *See generally* Annotation, *Exhaustion of Administrative Remedies as Prerequisite to Suit Under Employee Retirement Income Security Act of 1974 (29 U.S.C.S. §§ 1001 et seq.)*, 54 A.L.R.Fed. 364 (1981 & Supp. 1987) (noting split of authority regarding whether such a requirement exists).

**16.** Plaintiffs have alluded to defendant's alleged failure to inform them of their appeal rights under the plan and ERISA; that failure allegedly denied them access to review. ERISA, however, requires only that an employee benefit plan

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. It is not necessary to reach plaintiffs' charge because the exhaustion requirement has been met in this case. The Court is satisfied, however, that defendant's pamphlet and the information provided in response letters to plaintiffs' claims for benefits fulfilled this statutory obligation.

**17.** It should be noted that not all courts have enthusiasticly accepted the "arbitrary and capricious" standard adopted by the Fourth Circuit in *Holland. See, e.g., Bruch v. Firestone Tire and Rubber Co.*, 828 F.2d 134, 138–145 (3d Cir.1987) (reviewing the genesis of the "arbitrary and capricious" standard, but applying instead principles of trust law to resolve claim involving employee pension and welfare trust). Notwithstanding this criticism, the arbitrary and capricious standard remains accepted by a majority of jurisdictions. *See, e.g., Reilly v. Blue Cross and Blue Shield United of Wisconsin*, 846 F.2d 416 (7th Cir.1988); *Varhola v. Doe*, 820 F.2d 809 (6th Cir.1987); *Pabst Brewing Co. v. Anger*, 784 F.2d 338 (8th Cir.1986) (per curiam); *Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149 (9th Cir. 1986); *Anderson v. Ciba–Geigy Corp.*, 759 F.2d 151885120750 (11th Cir.1985); *Miles v. New York State Teamsters Conference*, 698 F.2d 593 (2d Cir.1983); *Dennard v. Richards Group, Inc.*, 681 F.2d 306, 314 (5th Cir.1982); *Kosty v. Lewis*, 319 F.2d 744 (D.C.Cir.1963).

**18.** As the administrator of an ERISA-regulated plan, defendant GHMSI has a statutory fiduciary duty to plaintiffs and other beneficiaries of the plan. *See Thayer v. Group Hospitalization & Medical Services, Inc.*, 674 F.Supp. 924, 925 (D.D.C.1987) (in similar case, GHMSI is fiduciary because it was "the decisionmaker as to whether the plaintiff would continue to receive benefits under the plan governed by ERISA."); *see also Reilly v. Blue Cross & Blue Shield United of Wisconsin*, 846 F.2d 416, 419 (7th Cir.1988) (Blue Cross & Blue Shield of Wisconsin, the administrator of an employee benefit plan, is an ERISA fiduciary. As such, GHMSI is held to a "prudent man standard of care" in its administration of the plan. *See* 29 U.S.C. § 1104(a)(1)(A) & (B). GHMSI has satisfied its fiduciary duty if its decisions regarding the plan are not arbitrary or capricious.

GHMSI, in its pamphlet describing plan benefits, admits only a "limited fiduciary responsibility" for, *inter alia*, "the administration, processing, payment and adjudication of claims for participants' health care benefits." Plaintiffs' claims directly relate to those actions for which GHMSI, by its own admission, assumes a fiduciary responsibility; therefore, this Court need not decide the precise scope of GHMSI's duties.

state causes of action protects that uniformity. As the *Pilot Life* Court noted, this uniformity is designed to "help administrators, fiduciaries and participants to predict the legality of proposed actions without the necessity of reference to varying state laws." *Pilot Life*, 107 S.Ct. at 1557 [quoting H.R.Rep. No. 93–533, 94th Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4650].

At the same time, Congress sought to extend those protections to more employees by encouraging further development of employee benefit plans. No detailed blueprint for the creation of those plans was set forth. Rather, Congress recognized that uniform protections did not necessarily require carbon copy plans; flexibility in their design and management would enable administrators to tailor the plans to best serve the needs and interests of employee beneficiaries. Thus, within the framework of ERISA requirements, the decisions of plan administrators—those who oversee the plans on a daily basis—were to be accorded deference. *See Holland*, 772 F.2d at 1148.[19]

In deciding whether an administrator's decision is arbitrary or capricious, the Court may only consider " 'whether the

decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment....' " *LeFebre*, 747 F.2d at 204 [quoting *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974)]. This Court may not substitute its judgment for that of the plan administrator.

■ In the instant case, the decision by GHMSI to terminate benefits to Mr. Keel upon the termination of the Group Contract was clearly not arbitrary or capricious. Under the explicit terms of the Group Contract, benefits are provided only while the Contract remains in effect between the defendant and eligible employees and beneficiaries. Specifically, in Article X, the Contract provides that termination of the Contract may be effected at the option of either party with thirty days written notice. At such time, "benefits [under the Group Contract] shall terminate for all Subscribers as of the date of termination of the contract."

In addition, the provisions of the Contract that define "Subscriber" and "Basic Benefits" underscore this policy of termination:

19. *See also Berry v. Ciba–Geigy Corp.*, 761 F.2d 1003, 1007 (4th Cir.1985) ("ERISA was designed to promote 'internal resolution of claims,' to permit 'broad managerial discretion' on the part of pension plan trustees in formulating claims procedures, and to encourage informal and non-adversarial proceedings...." [citing *Grossmuller v. International Union, UAW Local 813*, 715 F.2d 853, 857 (3d Cir.1983)]); *Taylor v. Bakery & Confectionary Union & Industry International Welfare Fund*, 455 F.Supp. 816, 820 (E.D.N.C. 1978) (noting "a strong policy [under ERISA] in favor of letting trustees decide an employee's benefit eligibility").

At first blush, the goal of national uniformity under ERISA and the deferential scope of review applied by the federal courts appear contradictory. National uniformity would seem to be at odds with affording administrators discretion in the construction and interpretation of their plans. Under an arbitrary and capricious standard, for example, plan administrators in Seattle and Richmond, Virginia might well reach different results by giving a different construction to the same plan ambiguity; yet, neither interpretation may be arbitrary or capri-

cious. The uniformity sought by Congress in ERISA was not in the specific results of administrators' decisions, but rather in the broad guarantee of certain protections to employees nationwide under ERISA. As long as administrators comply with those statutory requirements, they may otherwise administer the plans with a degree of discretion.

Some measure of uniformity, however, should result as a body of federal common law develops to aid courts in their adjudication of ERISA suits. *See Holland*, 772 F.2d at 1147 n. 5 [quoting *Gulf Oil Co.*, 754 F.2d at 1501–1502]. As part of the "arbitrary and capricious" review, a federal court ensures that the administrator's decision was not clearly erroneous. *Id.* In making that determination, the court must necessarily verify that the administrator's decision was not based upon a mistake of law. In this case, for example, the Court adopts, as part of that body of federal common law, settled principles of contract interpretation borrowed from state common law; specifically, contract terms, where unambiguous, should be given their plain meaning.

*Subscriber:*

Employee, his spouse, and each other dependent, *only if and while such person is covered by this Contract.* (emphasis added)

\* \* \* \* \* \*

*Basic Benefits:*

Benefits for Medical Expenses as defined under Paragraph 6 of this Article shall be provided by the Participating Plan. Benefits shall be payable under this Article for Medical Expenses *incurred by a Subscriber on account of an Illness of such Subscriber and incurred while he is covered under this Contract. The date a medical service is received or the date drugs or supplies are purchased shall be the date Medical Expenses are incurred.* (emphasis added)

The terms emphasized by the Court make manifest that the Group Contract provides plan benefits only during the time period that the Group Contract remains in effect and the individual remains a Subscriber. The status of "subscriber" is limited only to that period of time during which "such person is covered by this contract." Similarly, benefits are provided for only those expenses incurred "while [a Subscriber] is

covered under this Contract." The contract terms could hardly be more specific.

■ The simple facts of this case confirm, therefore, the defendant's interpretation—indeed, the plain meaning—of the Group Contract. Plaintiff, Stephen Keel, is seeking benefits for medical expenses incurred after the Contract had been terminated by Kay Jewelers, the group with whom he was a participant in the plan. The Contract explicitly precludes the payment of benefits for such expenses. The defendant's decision to deny benefits to Mr. Keel was, therefore, not arbitrary and capricious and should not be disturbed.[20]

Accordingly, the Court rejects the notion, urged by plaintiffs, that the parties are implicitly bound by representations or omissions made in the pamphlet entitled "A Comprehensive Program of Health Protection For the Employees of Kay Jewelers, Inc."[21] Rather, that pamphlet was merely a "summary plan description" of the benefits of the plan, as required by § 1022(a)(1) of ERISA. Indeed, the pamphlet itself warned that its general description of the plan's benefits did not constitute the terms of the contract between GHMSI and Kay

---

**20.** Not surprisingly, the same result would obtain even if state common law principles governed. First, it is clear that the terms of the Contract itself govern. *See infra* notes 20–22 and accompanying text; *see also* Couch on Insurance § 27.3, at 606 (2d ed. 1984) ("[t]he status of a beneficiary ... depends entirely upon the terms of the contract of insurance, construed in accordance with the rules of interpretation and construction applicable to such contracts"). Plaintiffs' failure to read the Group Contract does not excuse them from its terms. *Cf. Mercury Coal & Coke, Inc. v. Mannesmann Pipe & Steel Corp.,* 696 F.2d 315, 318 (4th Cir. 1982) (under N.Y. and W.Va. law, failure to read contract does not invalidate contract term).

Second, it is well-settled in Virginia that clear and unambiguous contract terms are to be accorded full effect under Virginia law. *See Pilot Life Ins. Co. v. Karcher,* 217 Va. 497, 229 S.E.2d 884 (1976) (unambiguous terms in insurance contract provided benefits only while policy in force; court rejected "vesting" theory of benefits); *see also Sonneman v. Blue Cross & Blue Shield of Minnesota,* 403 N.W.2d 701 (Minn.Ct. App.1987) (same); *Daly v. Golden Rule Life Ins. Co.,* 95 Ill.App.2d 138, 237 N.E.2d 790 (1968) (same); *Wulffenstein v. Deseret Mutual Benefit*

*Association,* 611 P.2d 360 (Utah 1980) (same); *Blue Cross of Florida, Inc. v. Dysart,* 340 So.2d 970 (Fla.Dist.Ct.App.1976) (same); *Hamilton v. Travelers Ins. Co.,* 587 F.Supp. 521 (E.D.Mo. 1984), *aff'd,* 752 F.2d 1350 (8th Cir.1985) (same). The terms of the Group Contract in this case are clear and unambiguous; therefore, plaintiff's reliance on the common law principle that ambiguous terms in an insurance contract are to be construed in favor of the insured is misplaced. *See Joseph P. Bornstein, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 828 F.2d 242, 245 (4th Cir.1987) (and Virginia cases cited therein); *cf. Fields v. Blue Shield of California,* 209 Cal.Rptr. 781, 163 Cal.App.3d 570 (1985) (under ambiguous "lifetime maximum benefits" clause, benefits vested once treatment for illness begun).

**21.** *See Tinsley v. General Motors Corp.,* 622 F.Supp. 1547, 1552 (N.D.Ind.1985) (In ERISA suit, "employee cannot rely on language in a descriptive booklet when the booklet contains a disclaimer that the formal text of the plan controls ... [and when] no discrepancy exists between the ... Handbook and the plan.") [citing *Anthony v. Ryder Truck Lines, Inc.,* 611 F.2d 944, 948 (3d Cir.1979); *Higgins v. Carpenters Health and Welfare Fund,* 524 F.Supp. 601, 607 (E.D.Pa.1981) ].

Jewelers employees,[22] and referred employees to the Group Contract on file with their employer, Kay Jewelers, for the legal terms and conditions of the plan's health care coverage.

### Conclusion

For the reasons stated herein, the defendant's claim for summary judgment is hereby granted. The plaintiffs' counterclaim for summary judgment is denied.

---

22. *See infra* note 4. ERISA requires that such "summary plan descriptions" be provided to all participants and beneficiaries of employee benefit plans, describing, *inter alia*, the requirements for eligibility and benefits, "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits," procedures for filing claims, "and the remedies available under the plan for the redress of claims which are denied in whole or in part." 29 U.S.C.

§ 1022(b). That description must be written so that "the average plan participant" can understand the scope of his or her benefits under the plan. 29 U.S.C. § 1022(a)(1). The GHMSI pamphlet in this case satisfies that requirement.