DOMENGEAUX, Judge.
Judy G. Baker Jordan commenced these proceedings to recover wages, in actuality severance pay benefits, punitive damages and attorney’s fees. Jordan maintains that she is entitled to judgment subsequent to the elimination of her position with Central Louisiana Telephone Company, Inc. (Central). Jordan named as defendants: (1) Central, her former employer; and (2) Century Telephone Enterprises, Inc. (Century), the telephone holding company which currently owns Central.
Jordan began working for Central in March of 1967. Central, at that time, was a wholly owned subsidiary of Continental Telephone Corporation (Continental).
In June of 1978, Century and Continental entered into an agreement which resulted *1081 in Century’s acquisition of Central. Jordan received from Continental, at the time of the Central sale, $1,500.00 representing her interest in Continental/Central’s retirement plan. The plaintiff received from Century assurances that the acquisition would result in no loss of benefits or credit for service, the time credited each Central employee for their period of service as a Central employee.
Continental/Central, at the time of the Century acquisition, had no severance pay policy. Century, however, did have a “Termination Allowance” plan. Century’s plan provided:
As a regular full-time or part-time employee, you are eligible to receive termination allowance if your service with CTE is terminated because of a reduction in work force (layoff), an elimination of your job or your dismissal if you are not properly qualified for the job and a more suitable job is unavailable.
The amount, in addition to your unused vacation, will be based upon your net credited service and your basic rate of pay (including any permanent differential, but excluding overtime and premium pay) as follows:
One week’s pay for each completed year of service up to and including five years; plus,
Two week’s pay for each completed year of service from six years through 10 years; plus,
Three week’s pay for each completed year of service from 11 years through 13 years; plus,
Four week’s pay for each completed year of service beyond 13 years; maximum termination allowance cannot exceed 52 weeks, (emphasis added).
In February of 1984, almost six years after the Central acquisition, Century amended the “Termination Allowance” provision of its employee’s handbook. Century’s amended severance pay policy provided:
As a regular full-time or part-time employee, you are eligible to receive termination allowance if your service with CTE is terminated because of a reduction in work force (layoff), an elimination of your job or your dismissal if you are not properly qualified for the job and a more suitable job is unavailable.
The amount, in addition to your unused vacation, will be based upon your credited service (from date of hire or date your company was acquired by Century Telephone, if later) and your basic rate of pay “including any permanent differential, but excluding overtime and premium pay” as follows:
One week’s pay for each completed year of service up to and including five years; plus,
Two week’s pay for each completed year of service from six years through 10 years; plus,
Three week’s pay for each completed year of service from 11 years through 13 years; plus,
Four week’s pay for each completed year of service beyond 13 years; maximum termination allowance cannot exceed 52 weeks. (Emphasis added).
Century amended its “Termination Allowance” policy in accordance with another provision of its employee’s handbook. The other provision, found on the handbook’s “INTRODUCTION” page, provided:
Policies set forth in this manual are considered to be those of Century Telephone Enterprises, Inc., and they may be interpreted, applied, amended or revoked at any time by the Company.
Central’s employees received notice of the February, 1984 change in their severance benefits in April or May of 1984. Prior to February of 1984, all Central employees eligible to receive termination allowance benefits received those payments based on the date they were originally hired by Central, rather than the date Central was acquired by Century.
In April of 1985, Century, in accordance with a preexisting policy of consolidating offices to become more efficient, decided to reduce its Jena, Louisiana office, where Jordan was employed, to a payment collection office only. All the Jena employees, with the exception of part-time collection personnel, were offered the opportunity of *1082 remaining with Century at its office in Alexandria, Louisiana, approximately forty-eight miles away. The employees were additionally offered $3,000.00 to cover moving expenses.
Jordan chose not to relocate to Alexandria. Century concluded that she was entitled to termination allowance benefits for the period June 19, 1978, the date Century acquired Central, to June 28,1985, the date her employment with Central terminated. Jordan received $3,963.60, as provided by the Century severance policy in effect, and she received an additional $3,000.00 special termination benefit similar to the moving expenses the other employees were receiving. Jordan maintains that the additional $3,000.00 was compensation for remaining with Central until the Jena/Alexandria consolidation was complete.
Jordan asserted at trial that she was entitled to $19,397.60 in termination allowance benefits, less the $3,963.60 she had previously received. She premised her action on La.R.S. 23:631 et seq., Louisiana’s Wage Payment Act, and argued that she was entitled to severance benefits based on the date she was originally hired by Central as provided by the Century termination allowance policy in effect in June of 1978 when Central was acquired. Jordan also sought punitive damages and attorney’s fees for Central’s failure to pay her timely.
The Trial Court rendered judgment in favor of Jordan and against Century and Central in solido. The Court concluded that whether judgment was premised on Louisiana’s Wage Payment Act, as maintained by the plaintiff or whether state law was preempted by federal law, the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. §§ 1001 et seq., as maintained by the defendants, Jordan was entitled to judgment.
Jordan was awarded $19,377.60 in termination allowance benefits, $7,927.20 in punitive damages and $7,500.00 in attorney’s fees. The Court arrived at its punitive damage award by concluding that federal law gave the courts broad discretion to fashion a remedy and that the statutory penalty provided by state law was an adequate evaluation of damages. Century and Central were given a credit for the $3,000.00 special termination allowance benefits previously paid, but were taxed with court costs. The Trial Court made no mention of the $3,963.60 Century and Central paid Jordan in accordance with Century’s severance policy as amended in February, 1984.
The Trial Court concluded that Century, despite assurances it made to the Central employees in a May or June, 1978 meeting, changed the termination allowance benefits the Central employees enjoyed under Continental's ownership. The Court specifically quoted what it referred to as the “Continental Plan”, the severance pay plan of Central prior to the acquisition by Century. The terms of the plan, according to the Court, read as follows:
As a regular full-time or part-time employee you are eligible to receive termination allowance if your service with CTE is terminated because of a reduction in work force (layoff), an elimination of your job or your dismissal if you are not properly qualified for the job and a more suitable job is unavailable.
The amount, in addition to your unused vacation, will be based upon your net credited service and your basic rate of pay (including any permanent differential, but excluding over-time and premium pay) as follows:
One week’s pay for each completed year of service up to and including five years; plus,
Two week’s pay for each completed year of service from six years through 10 years; plus,
Three week’s pay for each completed year of service from 11 years through 13 years; plus,
Four week’s pay for each completed year of service beyond 13 years; maximum termination allowance cannot exceed 52 weeks, (emphasis added).
The Court ultimately concluded that Century, when it amended its termination allowance policy to provide that benefits would be calculated “from the date of hire or [the] date your company was acquired by *1083 Century Telephone, if later”, breached the commitment its officers made to the Central employees that they would lose no benefits as a result of the acquisition.
The plan, referred to by the Trial Court as the “Continental Plan”, was not a severance pay plan provided the Central employees by Central or its original parent company Continental. The provision quoted above in its entirety, specifically noting the emphasis added by this Court, “CTE ”, was the termination allowance policy of Century, CTE, in effect in June of 1978 when Century acquired Central. We note, as previously stated, prior to Central’s acquisition by Century its employees enjoyed no severance benefits.
The Trial Court then addressed Louisiana’s Wage Payment Act. The Act provides that any employee upon discharge or resignation shall be paid all amounts due by the employer within three days of the discharge or resignation. La.R.S. 23:631 (1950) (amended 1977). The Court specifically cited La.R.S. 23:640 (1950) (amended 1966), captioned “Fringe benefits payable under collective bargaining agreements”, which provides:
Any and all amounts payable by employers under collective bargaining agreements with any labor organization for vacation, health and welfare, pension, apprenticeship and training, supplemental unemployment benefits, or any other fringe benefits considered as wages by the secretary of labor in determining prevailing wage rates shall be considered and treated as wages due by employers under R.S. 23:631-23:639 and employers shall be obligated to pay the said amounts to the trust funds, trustees, or other obligees to whom such payments shall be due and owing in the same manner and subject to the same penalties for nonpayment and the same provisions as to collection and enforcement by the said obligees as apply to ordinary wages under R.S. 23:631-23:639.
The Court reasoned that although section 640 addressed amounts payable under collective bargaining agreements, “one could easily construe that if such benefits [severance benefits] were ‘wages’ under collective bargaining agreements, there is no reason to define them as anything else under any other form or plan.” The Court then analogized that termination allowance benefits were fringe benefits similar to “supplemental unemployment benefits” which were included within the definition of “wages”.
The Court, answering the defendants’ contentions that state law was preempted by federal law, stated that, “[f]ederal law seems to be clear that the Employee Retirement Income Security Act (ERISA) has preempted state law in areas involving severance pay.” The Court, interpreting ERISA, then concluded that although termination allowance benefits were encompassed by ERISA as a “welfare benefit plan”, Jordan was still entitled to judgment because Century’s amendment of the “Continental Plan” was arbitrary and capricious.
The Trial Court held that Century had acted in an arbitrary and capricious manner when it selected the date on which it amended its severance benefits policy. The Court concluded that Century’s actions were designed solely to save Century and Central the expense of termination allowance payments which might be incurred as a result of its consolidations. Century, as the employer and “plan administrator”, the Court stated, had not acted in good faith or in the interest of its employees as required by law. 29 U.S.C.S. § 1002(16) (1982).
On appeal, Century and Central maintain that the Trial Court erred in the following respects:
(1) The Trial Court erred when it concluded that Central had a termination allowance policy prior to its acquisition by Century and when it concluded that Central’s employees lost those benefits as a result of the February, 1984 amendment to the termination allowance provision;
(2) The Trial Court erred in applying the Louisiana Wage Payment Act, R.S. 23:631 et seq., rather than concluding that the Employee Retirement Income Security Act of 1974, 29 U.S. *1084 C.S. §§ 1001 et seq., preempted state law; and
(3) The Trial Court erroneously interpreted ERISA when it concluded that Century and Central had arbitrarily and capriciously changed Century’s termination allowance policy.
The appellants argue in the alternative that the Trial Court erred in three additional respects. Century and Central’s alternative assignments of error are:
(1) The Trial Court erred in failing to address Century and Central’s argument that Jordan failed to qualify for termination allowance benefits under a plain reading of Century’s severance policy in effect in June of 1978;
(2) The Trial Court erred in awarding Jordan punitive damages and attorney’s fees; and
(3) The Trial Court erred in failing to credit Century and Central for the $3,963.60 they paid to Jordan in accordance with the termination allowance policy amended in February, 1984 and in effect on June 28, 1985, Jordan’s last day as a Central employee.
The initial issue on appeal addresses the Trial Court’s factual determination that Central, when it was a subsidiary of Continental, had a severance pay policy and that the Central employees, in particular, Jordan, lost those benefits as a consequence of Central’s acquisition by Century. The Trial Court specifically concluded that Central’s employees lost those benefits as a result of the February, 1984 amendment to the “Termination Allowance” policy. The Court placed particular emphasis on the assurances Century’s officers made to the Central employees at the time of the acquisition that no benefits would be lost as a result of the change in ownership.
Subsequent to our review of the record, we believe the Trial Court erred. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The evidence indicates, as previously announced in this opinion, that the Central employees, prior to the acquisition by Century, did not enjoy any severance benefits. The Trial Court erroneously referred to the Century “Termination Allowance” policy when it concluded that Continental or Central, when it was a subsidiary of Continental, had extended severance benefits to its employees.
The Trial Court, therefore, also erred when it held that Jordan, subsequent to the Century acquisition and the February, 1984 amendment, lost benefits she had been provided as an employee of a subsidiary of Continental. The statements made by the Century officers at the June, 1978 meeting, as they pertain to this issue, that no benefits would be lost, did not mislead Jordan as she had no severance benefits to lose.
Although we have concluded that the Trial Court’s factual determinations were erroneous, our ultimate resolution of this case is unaffected by that conclusion. We elected to address this issue solely out of an abundance of caution, intent upon correcting the record and eliminating the possibility of any misunderstanding concerning this opinion.
The second issue on appeal is whether the Trial Court erred in applying both state and federal law, rather than concluding that Congress had preempted the field of severance benefits when it enacted ERISA. ERISA provides, in part:
(a) Except as provided in subsection (b)[1] of this section, the provisions of this title *1085 and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefits plan described in section 4(a) [29 USC § 1003(a)] and not exempt under section 4(b) [29 USC § 1003(b)],
29 U.S.C.S. § 1144(a) (1982).
The inquiry is, therefore, whether Louisiana’s Wage Payment Act is a state law which “relate[s] to any employee benefit plan”.
Initially, it must be determined what an “employee benefit plan” is and whether a termination allowance or severance pay plan should be considered an employee benefit plan. ERISA defines the term “employee benefit plan” to include an “employee welfare benefit plan”. 29 U.S.C.S. § 1002(3) (1982). Section 1002 defines an “employee welfare benefit plan” to encompass:
Any plan, fund, or program ... maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) ... benefits in the event of ... unemployment, ... or (B) any benefit described in section 302(c) of the Labor Management Relations Act, 1947 [29 USC 186(c)] (other than pensions on retirement or death, and insurance to provide such pensions). 29 U.S.C.S. § 1002(1) (1982).
Severance benefit plans, as the evidence in this case and the jurisprudence indicate, are intended to provide assistance to former employees during periods following the elimination of their jobs. Jung v. FMC Corp., 755 F.2d 708 (9th Cir.1985), quoting, Sly v. P.R. Mallory & Co., Inc., 712 F.2d 1209 (7th Cir.1983). This view of severance benefits, as a type of unemployment benefit, is supported by the reference in section 1002(1)(B) to the Labor Management Relations Act, 29 U.S.C.S. §§ 141 et seq., which specifically refers to severance benefits, and by a review of the regulations promulgated by the Department of Labor under the authority of ERISA. 29 C.F.R. § 251Ó.3-1(A)(3) (1986); 29 U.S.C.S. §§ 1031(b) and (c) (1982). We, therefore, conclude, supported by considerable jurisprudence, that Century’s termination allowance plan is an “employee benefit plan” as intended by section 1144(a), ERISA’s preemption mandate. Holland v. Burlington Industries, Inc., 772 F.2d 1140 (4th Cir.1985), cert. denied, 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986); Scott v. Gulf Oil Corp., 754 F.2d 1499 (9th Cir.1985).
Having concluded that Century’s severance pay plan is an employee benefit plan within the ambit of ERISA, we must now turn to the question of whether Louisiana’s Wage Payment Act is a state law which “relate[s] to” an employee benefit plan. The task of the judiciary when confronted with a question of federal preemption is to “ascertain Congress’ intent in enacting the Federal Statute at issue.” Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983). Section 1144 was drafted in very expansive terms and addresses only four enumerated exceptions. 29 U.S.C.S. § 1144(b) (1982).[2] We conclude, because section 1144 is one of “the most sweeping federal preemption statute[s] ever enacted by Congress”, that the phrase “relate[s] to” must be given broad effect. Holland, supra at 1146, quoting, California Hospital Association v. Henning, 569 F.Supp. 1544, 1546 (C.D.Cal.1983), rev’d on other grounds, 770 F.2d 856 (9th Cir.1985), cert. denied, 477 U.S. 904, 106 S.Ct. 3273, 91 L.Ed.2d 564 (1986). This reading of the statute is consistent with the Congressional purpose of furthering uniformity of employee benefit laws. 29 U.S.C.S. § 1001(a)(1982). Subsequent to the above considerations, we conclude that Louisiana’s Wage Payment Act, R.S. 23:631 et seq., is a state law which “relate[s] to” the employee benefit plans described in ERISA *1086 and, therefore, must yield. U.S.Const. Art. VI; See also, Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); Shaw, supra.
The third issue on appeal concerns Century’s prerogative to amend its termination allowance policy. We must determine, to resolve this issue, whether ERISA permits amendments or changes to severance benefit policies and, if alterations are permissible, by what standards are they governed.
ERISA’s benefit vesting requirements provide that “accrued benefit[s]” are non-forfeitable and, therefore, not subject to amendment. 29 U.S.C.S. §§ 1002(19) and 1053(a) (1982). “Accrued benefit[s]” are defined as an “annual benefit commencing at normal retirement age.” 29 U.S.C.S. § 1002(23) (1982). These benefits are contrasted with what is described in the jurisprudence as “ancillary benefits”. Sutton v. Weirton Steel Division Of National Steel Corp., 724 F.2d 406, 410 (4th Cir. 1983), cert. denied, 467 U.S. 1205,104 S.Ct. 2387, 81 L.Ed.2d 345 (1984). Ancillary benefits are “unfunded, contingent, [formerly early retirement benefits] or severance payments ”. Id. at 410 (emphasis added). See, 29 U.S.C.S. § 1054(g) (Supp.1987). Ancillary benefits, including severance benefits, are subject to amendment because, unlike accrued benefits, they are not required to be vested. Congress concluded that employers should be permitted to change ancillary benefits because vesting of these benefits “would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income.” H.R.Rep. No. 807, 93d Cong.2d, Sess. 60, reprinted in 1974 U.S.Code Cong. & Ad.News 4639, 4890, 4935. Century was, therefore, not per se prohibited from amending its termination allowance policy. See, Sutton, supra; Fentron Industries, Inc. v. National Shopman Pension Fund, 674 F.2d 1300 (9th Cir.1982).
Having determined that ERISA does not prohibit an employer from changing its severance pay benefits, we must now decide by what authority Century changed its plan and whether Century’s changes are permitted by ERISA. ERISA provides that included within every employee benefit plan there be “a procedure for amending such plan and for identifying the persons who have authority to amend the plan.” 29 U.S.C.S. § 1102(b)(3) (1982). Century’s employees’ handbook, on its “INTRODUCTION” page, states that the,
Policies set forth in this manual are considered to be those of Century Telephone Enterprises, Inc., and they may be interpreted, applied, amended or revoked at any time by the Company. Strict compliance is required, with the responsibility for their administration delegated to each Division Manager or equivalent authorities in the Century System, (emphasis added).
Although ERISA does not set forth the elements of an amending procedure which must be included in a plan, it does not necessarily follow that the employer or plan administrator may fashion any change it desires.
ERISA provides that Century, as the plan administrator, must meet certain fiduciary standards. Those standards, set forth in section 1104(a), provide that:
A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
(A) for the exclusive purpose of:
(i) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.
29 U.S.C.S. § 1104(a) (1982).
The jurisprudence indicates that in determining whether a plan administrator has implemented his plan in accordance with the direction of section 1104, the courts *1087 should give great deference to the administrator’s decisions. The case law also establishes that an administrator’s action should not be vacated absent a showing that it was arbitrary, capricious or made in bad faith. Holland, supra; Dennard v. Richards Group, Inc., 681 F.2d 306 (5th Cir.1982). It must, therefore, be determined whether Century’s decision to calculate Jordan’s severance benefits from the time of its acquisition of Central, rather than the date Jordan was hired by Central, was arbitrary, capricious or made in bad faith.
The United States Fifth Circuit in the Dennard decision set forth six factors which it suggested should be considered in applying the arbitrary and capricious standard to ERISA claims and in determining the good faith of a plan administrator. Those factors are:
(1) Uniformity of construction;
(2) Fair reading and reasonableness of that reading;
(3) Unanticipated costs;
(4) Internal consistency of a plan under the interpretation given by the administrators;
(5) Any relevant regulations formulated by the appropriate administrative agencies; and
(6) Factual background of the determination by a plan [administrator] and inferences of lack of good faith, if any.
In Dennard, as in the majority of the cases which have applied the arbitrary and capricious standard, the issues presented for review have been eligibility determinations rendered in accordance with the language of the plans. They have been, in other words, reviews of administrators’ interpretation of benefit plan language. In the instant case, we have been called upon to review an employer/administrator’s determination that ERISA permitted it to reduce a “participant’s” severance benefits. 29 U.S.C.S. § 1002(7) (1982). We, therefore, only find factor six, “the factual background of the determination ... and inferences of lack of good faith” or bad faith, as the case may be, to be beneficial. Den-nard, supra at 314.
Century and Central argue that although the amendment to the plan did, in fact, reduce Jordan’s severance benefits, it did not violate ERISA’s fiduciary standards. The defendants argue that their action amounted to nothing more than reasonable business behavior not prohibited by ERISA. See, Dhayer v. Weirton Steel Division of National Steel Corp., 571 F.Supp. 316 (N.D.W.Va.1983), aff'd, 724 F.2d 406 (4th Cir.1983), cert. denied, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984). They submit that they owed an obligation not only to Jordan, but to all the Century Subsidiary employees to assure them that severance benefits would be available should their need for the benefit arise. They maintain that their reduction of Jordan’s termination allowance did not reduce it below an amount that would defeat the purpose of providing income for a period of unemployment while a worker seeks a new position.
Century and Central additionally argue that Jordan’s demands only amount to a windfall because prior to Century’s acquisition Continental/Central employees, of which Jordan was one, enjoyed no termination allowance benefits. The defendants further urge us to take note of the fact that when Central was acquired Jordan’s account with Continental/Central was squared. They, in essence, argue that Jordan received everything that she was due from Central for the time she was employed by the company prior it acquisition. The defendants point out in support of their argument that Jordan was only due retirement benefits and that Continental paid her for her interest.
The fact remains, however, that Century’s action amounted to a great reduction in Jordan’s termination allowance benefits and the evidence indicates that the motivating force behind the amendment was the desire to decrease the cost of its consolidation efforts. Century’s actions, despite testimony to the contrary, lend support to this belief. Although Century amended its employees’ handbook in February of 1984 and did not consolidate the Jena and Alexandria offices until more than a year later, the evidence suggests that the policy of consol *1088 idation had been in effect for some time prior to February of 1984.
The plaintiff established that as early as May of 1983 Century was consolidating offices and, even more damaging, the fact that some Central employees whose jobs were eliminated prior to the February, 1984 amendment received benefits based upon their date of hire, rather than the date of acquisition. These facts reveal that Century was consciously attempting to reduce the cost of its consolidation policy by denying benefits promised to its employees. Although attempting to reduce one’s operating expenses is reasonable business behavior, in this case, the method used was arbitrary and capricious, and violated ERISA.
When Century acquired Central, Century’s officers assured the Central employees in broad general language that they would not lose any benefits. Jordan, despite the fact that she had no severance benefits to lose, did have eleven years accumulated “credited service” with Central. We have no difficulty in understanding that Jordan relied on Century’s statements and its termination allowance policy. Century’s statements and its severance benefit plan were among the advantages of becoming a Century company employee and remaining with Central.
The defendants argue that their only purpose in reducing the amount of severance benefits was to bring the plan back in line with the purpose of severance pay, to provide short term income for a displaced employee. Two facts, however, create doubt in this argument. The initial fact is that Century only reduced the benefits of “acquired” employees as opposed to “originally hired” employees. Century’s actions only affected employees who became Century company employees subsequent to the acquisition of their employer. The second fact is that it is reasonable to pay an employee who has more credited service time a greater amount in severance benefits because an older employee may have a more difficult time obtaining new employment.
It is for these reasons that we conclude that Century/Central’s actions were arbitrary, capricious and undertaken in bad faith. Jordan is entitled to recover termination allowance benefits based on the termination allowance policy in effect in June of 1978 when Century acquired Central.
Century and Central argue in the alternative that under a plain reading of the termination allowance policy Jordan does not qualify for severance benefits. The defendants contend that the Trial Court failed to consider this argument and that it merits reversal of the lower court judgment. Subsequent to our review of the record and the Century employee’s handbook, we are unable to agree.
Century’s handbook provides that Century company employees are eligible for termination allowance benefits:
if [their] service with CTE [Century] is terminated because of a reduction in work force (layoff), an elimination of [their] job or [their] dismissal if [they] are not properly qualified for the job and a more suitable job is unavailable.
Century maintains that their was no layoff since there was no actual reduction in the work force. Century submits that Jordan “technically resigned her position.” (emphasis added).
The fact remains, however, that Jordan’s position in the Jena office was being eliminated due to Century’s consolidation. The evidence also reveals that had Jordan elected to remain with Century she would have had to travel forty-eight miles to work, each way, and she was not assured, despite the testimony of the Century witnesses, of receiving a position comparable to the one she previously held. Lastly, Century’s action of paying Jordan severance benefits based upon the date of Central’s acquisition indicates that it believed she was eligible to receive the benefits.
Century and Central’s second argument in the alternative suggests that the Trial Court erred in awarding Jordan punitive damages and attorney’s fees. We have reviewed the statutory and jurisprudential authority and we fail to agree. ERISA provides, in the section captioned “Liability for breach of fiduciary duty”, that the courts may award any “equitable *1089 or remedial relief as [they] may deem appropriate” against a fiduciary that breaches its duties. 29 U.S.C.S. § 1109(a) (1982). This provision is quite broad and grants unto the judiciary the discretion to award the damages it deems appropriate.
The jurisprudence has established that punitive damages, over and above compensatory damages, may be awarded, but that they should only be decreed in “very limited circumstances.” Russell v. Massachusetts Mutual Life Insurance Co., 722 F.2d 482, 492 (9th Cir.1983), rev’d. on other grounds, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). The Russell Court, citing Bise v. International Brotherhood of Electrical Workers, AFL-CIO, Local 1969, 618 F.2d 1299 (9th Cir.1979), cert. denied, 449 U.S. 904, 101 S.Ct. 279, 66 L.Ed.2d 136 (1980), held that prior to awarding punitive damages, it must be established that “the fiduciary, in carrying out its duties and responsibilities under the Act, acted with actual malice or wanton indifference to the rights of a participant or beneficiary.” Russell, supra at 492. We do not believe that the evidence is sufficient to establish that Century acted with actual malice. We do, however, believe that it supports the conclusion that Century’s actions amounted to wanton indifference to the rights of Jordan.
The defendants’ actions were undertaken solely in the interest of reducing the expense of their consolidation efforts. We do not believe that Century considered the plight of the worker, such as Jordan, without whose efforts the good will the company now enjoys would not be possible.
We further conclude that the Trial Court’s reliance on Louisiana’s Wage Payment Act, in particular, La.R.S. 23:632 (1950) (amended 1966 and 1977), in setting the damage award to be statutorily permitted and reasonable. R.S. 23:632 provides a statutory penalty equal to ninety days wages for the failure of an employer to timely pay an employee who resigns or is discharged, the wages to which the employee is entitled. Although we have concluded that state law has been preempted by ERISA, we believe that reliance upon state law as a guide in determining the punitive damage award is authorized by ERISA’s broad grant of discretionary power.
ERISA provides, in resolving the propriety of the lower court’s award of attorney’s fees, that “[i]n any action under this title ... by a participant, beneficiary or fiduciary, the Court in its discretion may allow a reasonable attorney’s fee and cost of the action to either party.” 29 U.S.C.S. § 1132(a) (1982). We are unable to conclude, subsequent to a review of section 1132, that the Trial Court abused its discretion in either rendering the award or in the amount of the award.
The defendants, in their final assignment on appeal, contend that the Trial Court erred when it failed to credit them for the $3,963.60 they had previously paid Jordan in severance benefits. We believe the evidence establishes that Century did, in fact pay Jordan the amount in question and that the appellants should receive a credit. Century and Central should be credited for the $3,963.60 previously paid Jordan.
For the above and foregoing reasons, the judgment of the District Court in favor of Judy G. Baker Jordan and against Central Louisiana Telephone Company, Inc. and Century Telephone Enterprises, Inc., in sol-ido, is amended to credit the appellants for $3,963.60.
The judgment in all other respects is affirmed.
All costs of this appeal are assessed: Ninety percent to Century Telephone Enterprises, Inc. and Central Louisiana Telephone Company, Inc., and ten percent to Judy G. Baker Jordan.
AMENDED AND AFFIRMED.

. (b)(1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.
(2)(A) Except as provided in subparagraph (B), nothing in this title shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.
(B) Neither an employee benefit plan described in section 4(a) [29 USC 1003(a)], which is not exempt under section 4(b) [29 USC 1003(b) ] (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, *1085 insurance contracts, banks, trust companies, or investment companies.
(3) Nothing in this section shall be construed to prohibit use by the Secretary of services or facilities of a State agency as permitted under section 506 of this Act [29 USC 1136].
(4) Subsection (2) shall not apply to any generally applicable criminal law of a State.

. See footnote 1.