KING, Judge.
The primary issues presented by this appeal are whether defendants are jointly, severally, and solidarily liable to plaintiff for additional termination pay benefits; whether federal or state law governs this dispute; and whether plaintiff is entitled to punitive damages and attorney’s fees for failure to timely pay the claimed benefits.
Mattie McCarroll (hereinafter plaintiff) filed suit against her former employer, Central Louisiana Telephone Company (hereinafter Central), and Century Telephone Enterprises, Inc. (hereinafter Century), the telephone holding company which currently owns Central, to recover additional severance pay benefits, punitive damages and attorney’s fees. Plaintiff filed suit claiming that she was discharged by defendants after her position was abolished because of a reduction in work force. She claims that she is entitled to 24 weeks of termination pay, less benefits already paid, as provided by defendants’ “Termination Allowance” policy which was in effect when Central was acquired by Century. Plaintiff also alleged defendants acted arbitrarily and capriciously in failing to pay her these benefits when due, and for this reason she also claims $6,868.80 in punitive damages and $3,000.00 in attorney’s fees.
Defendants answered plaintiff’s suit alleging that plaintiff’s position in Jena, Louisiana was relocated to an office in Alexandria, Louisiána and was not eliminated. In addition, they alleged plaintiff did not qualify for termination pay because she voluntarily resigned.
After a trial on the merits, the trial court rendered judgment in favor of plaintiff and against defendants holding they were jointly, severally and solidarily liable to plaintiff *386 for additional termination pay, punitive damages and attorney’s fees totaling $16,-027.80. From this judgment defendants timely perfected this suspensive appeal. We affirm the trial court’s judgment.
FACTS
In the instant case, all of the factual allegations and legal issues are virtually identical to those presented in the case of Jordan v. Central Louisiana Tel. Co., 525 So.2d 1079 (La.App. 3 Cir.1988).
Plaintiff began her employment with Central on August 3, 1971. Central, at that time, was a wholly owned subsidiary of Continental.
On June 5, 1978, Century and Continental entered into an agreement which resulted in Century’s acquisition of Central. After the acquisition, Century’s President, Mr. Clarke M. Williams, welcomed the Central employees at a staff meeting and assured them that their years of credited service with Central would be fully credited by Century. He told them that they would never lose any benefits attributable to their years of service with Central.
Mr. Ray Finney, Century’s Vice President of Human Resources, testified that he drafted a comprehensive employee handbook in 1982 which incorporated various company policies and procedures pertaining to employee benefits. The final draft was distributed to the employees of Century, including plaintiff, in November and December, 1983.
The Century employee handbook, in the section entitled “Company Policies,” outlined the company’s policy regarding a termination allowance as follows:
“As a regular full-time or part-time employee, you are eligible to receive termination allowance if your service with CTE is terminated because of a reduction in work force (layoff), an elimination of your job or your dismissal if you are not properly qualified for the job and a more suitable job is available.
The amount, in addition to your unused vacation, will be based upon your net credited service and your basic rate of pay (including any permanent differential, but excluding overtime and premium pay) as follows:
One week's pay for each completed year of service up to and including five years; plus,
Two week’s pay for each completed year of service from six years through 10 years; plus,
Three week’s pay for each completed year of service from 11 years through 13 years; plus
Four week’s pay for each completed year of service beyond 13 years; maximum termination allowance cannot exceed 52 weeks.” (Emphasis added.)
Testimony elicited during the trial showed that Central/Continental had no established severance pay policy for its employees at the time of the Century acquisition.
In January, 1984, after Century had acquired Central, Century’s senior management began to reevaluate their termination allowance policy because of the deregulation of the telephone industry. Relying on language found in the “Introduction” of the employee handbook, which stated management reserves the right to interpret, apply, amend or revoke its policies at anytime, Century amended its “Termination Allowance” provision on February 1, 1984, to provide for calculation of severance pay based on the date of hire or the date a subsidiary company was acquired by Century, if later.
Plaintiff testified that she received notice of the February, 1984 amendment during the month of May, 1984. She also testified that prior to February 1, 1984, former Central employees who left Century had received a termination allowance based on their original hire date, rather than the date Central was acquired by Century.
During the first week of May, 1985, Century decided to consolidate its customer service center in Jena, where plaintiff was employed, with its office in Alexandria. On May 13, 1985, Mr. Finney met with the Jena office employees to inform them of the impending consolidation and, at that time, the employees were offered the option of either relocating to Alexandria or *387 accepting termination. Those employees wishing to relocate were offered $3,000.00 to help defray moving expenses.
Plaintiff selected termination and was laid off on June 28, 1985, which is the last day the customer service office in Jena was open. By an interoffice memorandum dated May 24, 1985, plaintiff requested her termination pay in one lump sum based on her original hire date of August 3, 1971. Century decided to base her termination pay upon her years of credited service after June 19, 1978, the date Century acquired Central, in accordance with its amended “Termination Allowance” policy. Plaintiff received $3,434.40 for a termination allowance and an additional $3,000.00 as special pay for remaining on the job with Central until the close of the office in Jena, Louisiana.
On June 4, 1986, plaintiff filed suit for wages and punitive damages based on Louisiana’s Wage Payment Act, LSA-R.S. 23:631, et seq, seeking total damages of $29,512.80. Trial on the merits was held on March 19, 1987.
Because most of the relevant evidence in this matter had already been presented in the Jordan case, much of defendants’ presentation at trial was to prove that Century acted in good faith when it amended its termination policy and that justifiable reasons existed for its action.
Mr. Finney testified on behalf of defendants as to Century’s motivation in amending its termination benefits policy. He stated that the following factors were of importance in management’s decision to make that amendment: (1) employees of acquired companies like Central were receiving a “windfall benefit” due to the fact that these employees did not have a termination pay benefits policy until acquired by Century; (2) the original purpose of severance pay providing short-term financial relief was not being satisfied; and (3) the additional revenue created by the amendment could be better used for the improvement of other benefits (i.e., medical, vacation, insurance coverage, 401-K retirement plans) for all employees.
In Jordan, supra, this court concluded that the Employee' Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. §§ 1001, et seq., clearly preempts state law in the area of termination pay and that defendants are not per se prohibited from amending their severance pay benefits. In Jordan, supra, we then proceeded to examine whether Century’s action was in conformity with fiduciary standards set forth in 29 U.S.C.A. § 1104(a) and said.
“Having determined that ERISA does not prohibit an employer from changing its severance pay benefits, we must now decide by what authority Century changed its plan and whether Century’s changes are permitted by ERISA. ERISA provides that included within every employee benefit plan there be ‘a procedure for amending such plan and for identifying the persons who have authority to amend the plan.’ 29 U.S.C.S. § 1102(b)(3) (1982). Century’s employee’s handbook, on its ‘INTRODUCTION’ page, states that the,
Policies set forth in this manual are considered to be those of Century Telephone Enterprises, Inc., and they may be interpreted, applied, amended or revoked at any time by the Company. Strict compliance is required, with the responsibility for their administration delegated to each Division Manager or equivalent authorities in the Century System, (emphasis added).
Although ERISA does not set forth the elements of an amending procedure which must be included in a plan, it does not necessarily follow that the employer or plan administrator may fashion any change it desires.
ERISA provides that Century, as the plan administrator, must meet certain fiduciary standards. Those standards, set forth in section 1104(a), provide that:
‘A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
(A) for the exclusive purpose of:
(i) providing benefits to participants and their beneficiaries; and
*388 (ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.’ 29 U.S.C.S. § 1104(a) (1982).
The jurisprudence indicates that in determining whether a plan administrator has implemented his plan in accordance with the direction of section 1104, the courts should give great deference to the administrator’s decisions. The case law also establishes that an administrator’s action should not be vacated absent a showing that it was arbitrary, capricious or made in bad faith. Holland [v. Burlington Industries, Inc., 772 F.2d 1140 (4th Cir. 1985) ], supra; Dennard v. Richards Group, Inc., 681 F.2d 306 (5th Cir.1982). It must, therefore, be determined whether Century’s decision to calculate Jordan’s severance benefits from the time of its acquisition of Central, rather than the date Jordan was hired by Central, was arbitrary, capricious or made in bad faith.
The United States Fifth Circuit in the Dennard decision set forth six factors which it suggested should be considered in applying the arbitrary and capricious standard to ERISA claims and in determining the good faith of a plan administrator. Those factors are:
(1) Uniformity of construction;
(2) Fair reading and reasonableness of that reading;
(3) Unanticipated costs;
(4) Internal consistency of a plan under the interpretation given by the administrators;
(5) Any relevant regulations formulated by the appropriate administrative agencies; and
(6) Factual background of the determination by a plan [administrator] and inferences of lack of good faith, if any.
In Dennard, as in the majority of the cases which have applied the arbitrary and capricious standard, the issues presented for review have been eligibility determinations rendered in accordance with the language of the plans. They have been, in other words, reviews of administrators’ interpretation of benefit plan language. In the instant case, we have been called upon to review an employer/administrator’s determination that ERISA permitted it to reduce a ‘participant’s’ severance benefits. 29 U.S.C. S. §§ 1002(6) (1982). We, therefore, only find factor six, ‘the factual background of the determination ... and inferences of lack of good faith’ or bad faith, as the case may be, to be beneficial. Dennard, supra at 314.
Century and Central argue that although the amendment to the plan did, in fact, reduce Jordan’s severance benefits, it did not violate ERISA’s fiduciary standards. The defendants argue that their action amounted to nothing more than reasonable business behavior not prohibited by ERISA. See, Dhayer v. Wierton Steel Division of National Steel Corp., 571 F.Supp. 316 (N.D.W.Va.1983), aff'd, 724 F.2d 406 (4th Cir.1983), cert. den., 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984). They submit that they owed an obligation not only to Jordan, but to all the Century Subsidiary employees to assure them that severance benefits would be available should their need for the benefit arise. They maintain that their reduction of Jordan’s termination allowance did not reduce it below an amount that would defeat the purpose of providing income for a period of unemployment while a worker seeks a new position.
Century and Central additionally argue that Jordan's demands only amount to a windfall because prior to Century’s acquisition Continental/Central employees, of which Jordan was one, enjoyed no termination allowance benefits. The defendants further urge us to take note of the fact that when Central was acquired Jordan’s account with Continental/Central was squared. They, in essence, argue that Jordan received everything that she was due from Central for the time *389 she was employed by the company prior [to] its acquisition. The defendants point out in support of their argument that Jordan was only due retirement benefits and that Continental paid her for her interest.
The fact remains, however, that Century’s action amounted to a great reduction in Jordan’s termination allowance benefits and the evidence indicates that the motivating force behind the amendment was the desire to decrease the cost of its consolidation efforts. Century’s actions, despite testimony to the contrary, lend support to this belief. Although Century amended its employees’ handbook in February of 1984 and did not consolidate the Jena and Alexandria offices until more than a year later, the evidence suggests that the policy of consolidation had been in effect for some time prior to February of 1984.
The plaintiff established that as early as May of 1983 Century was consolidating offices and, even more damaging, the fact that some Central employees whose jobs were eliminated prior to the February, 1984 amendment received benefits based on their date of hire, rather than the date of acquisition. These facts reveal that Century was consciously attempting to reduce the cost of its consolidation policy by denying benefits promised to its employees. Although attempting to reduce one’s operating expenses is reasonable business behavior, in this case, the method used was arbitrary and capricious, and violated ERISA.
When Century acquired Central, Century’s officers assured the Central employees in broad general language that they would not lose any benefits. Jordan, despite the fact that she had no severance benefits to lose, did have eleven years accumulated ‘credited service’ with Central. We have no difficulty in understanding that Jordan relied on Century’s statements and its termination allowance policy. Century’s statements and its severance benefit plan were among the advantages of becoming a Century company employee and remaining with Central.
The defendants argue that their only purpose in reducing the amount of severance benefits was to bring the plan back in line with the purpose of severance pay, to provide short term income for a displaced employee. Two facts, however, create doubt in this argument. The initial fact is that Century only reduced the benefits of ‘acquired’ employees as opposed to ‘originally hired’ employees. Century’s actions only affected employees who became Century company employees subsequent to the acquisition of their employer. The second fact is that it is reasonable to pay an employee who has more credited service time a greater amount in severance benefits because an older employee may have a more difficult time obtaining new employment.
It is for these reasons that we conclude that Century/Central’s actions were arbitrary, capricious and undertaken in bad faith ...” Jordan v. Central Louisiana Tel. Co., 525 So.2d 1079 at pages 1086 thru 1088 (La.App. 3 Cir. 1988).
Relying on Jordan, supra, and the cases cited therein, we conclude that plaintiff is entitled to recover termination allowance benefits based on the termination allowance policy in effect in June of 1978 when Century acquired Central. For this reason, we find that the trial judge was not clearly wrong or manifestly in error in finding plaintiff was entitled to additional termination pay, attorney’s fees, and punitive damages.
For the foregoing reasons, the trial court judgment is affirmed. All costs of appeal are assessed to defendants-appellants.
AFFIRMED.